# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FABIAN EDDY GRAY, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> NICHOLAS MILLS, et al., ) <br> ) <br> Defendants. ) | Case No. CIV-24-00268-PRW |

## ORDER

Before the Court is the Motion to Dismiss (Dkt. 7), filed by Defendant Patrick F. Mays; Plaintiffs' Response (Dkt. 11); and Mays's Reply (Dkt. 12). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion (Dkt. 7).

### *Background*

This case arises out of a high-speed pursuit, which Defendant Nicholas Mills, an Oklahoma Highway Patrol trooper, ended by utilizing a "Tactical Vehicle Intervention" (more commonly known as a "pit maneuver"), resulting in the death of the fleeing vehicle's two passengers, one of whom was Ethan Mestas.

Around 9:00pm on August 15th, 2022, Trooper Mills observed a vehicle that had an "equipment violation." Trooper Mills activated his emergency lights to initiate a traffic stop, but the driver refused to yield and fled at high speed. Trooper Mills chased after the car.

At some point during the chase, Trooper Mills requested approval to perform a Tactical Vehicle Intervention. According to Plaintiffs, a Tactical Vehicle Intervention

1

generally involves "gently nudg[ing] the right or left quarter panel of the [fleeing] vehicle, causing a simple 180 degree turn at a safe speed for the vehicle to come to a stop." The Complaint alleges that 30 to 40 miles an hour is the "upper limits" on when an officer can perform a Tactical Vehicle Intervention safely. It is unclear whether Trooper Mills ever received permission, but the chase ended when he initiated the maneuver while the vehicles were traveling in excess of 80 miles per hour. This caused the fleeing vehicle to "violently roll over and eject the two passengers." Mestas died at the scene, and the other passenger died shortly thereafter.

Defendant Patrick Mays is the acting chief of the Oklahoma Highway Patrol and thus its final decision-maker. Plaintiffs allege that Oklahoma Highway Patrol policy allows troopers to perform Tactical Vehicle Interventions at any speed. Specifically, the Complaint alleges that Oklahoma Highway Patrol policy "states that a reasonable trooper 'shall carefully compare the seriousness of the violation to the hazard of a vehicle pursuit.'" It also complains that the Oklahoma Highway Patrol has recently "removed instructions to troopers that performing [Tactical Vehicle Interventions] at increased speeds increases the risk of serious injury or damage that may occur."

Because Mays is the Oklahoma Highway Patrol's final decision-maker, the Complaint maintains that he would have been aware that Tactical Vehicle Interventions performed at speeds higher than 30 to 40 miles per hour "are unsafe and are a use of deadly force." According to the Complaint, the state of Oklahoma has one of the highest rates of deaths resulting from law enforcement pursuits in the country. This has prompted legislative scrutiny of which Mays would have been aware. The Complaint also refers to

other law enforcement agencies' "self-termination" policies, where a pursuit is abandoned if the fleeing vehicle drives over 15 miles per hour over the stated speed limit or the chase persists over a certain duration. It also alleges that Mays would have been aware of a 2015 study which found that suspects of self-terminated pursuits (1) slow to a safe speed within two minutes of the termination and (2) are "successfully detained at a later date 80% of the time." Finally, it asserts that Mays is aware of at least two other incidents where Tactical Vehicle Interventions performed at speeds over 100 miles per hour resulted in serious injury and death.

Despite all this, alleges the Complaint, the Oklahoma Highway Patrol continues at Mays's direction to "train, instruct, supervise[,] and approve high speed tactical vehicle interventions[.]" Plaintiffs allege that Mays did not adequately train OHP officers in proper rules of engagement for performing a Tactical Vehicle Intervention at high speeds for relatively minor criminal violations.

On March 12, 2024, Plaintiffs, representatives of Mestas's estate, filed the instant Complaint, alleging claims under 42 U.S.C. § 1983, the Oklahoma Governmental Tort Claims Act, and the Oklahoma Constitution. (Dkt. 1). As to Mays, they argue that he failed to provide adequate training and supervision, thereby committing gross negligence and violating Mestas's rights to due process and to be free from excessive force. Mays moves to dismiss Plaintiffs' claims against him in his individual capacity, arguing that he is entitled to qualified immunity and that Plaintiffs failed to state a claim on which relief may be granted. Plaintiffs disagree, but because they did not plead facts to show that Mays

violated clearly established law, they have not overcome Mays's qualified immunity as to their individual-capacity Section 1983 claims.

## *Legal Standard*

In reviewing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the Court must satisfy itself that the pleaded facts state a claim that is plausible.[1] All well-pleaded allegations in the complaint must be accepted as true and viewed "in the light most favorable to the plaintiff."[2] Additionally, the Court must "draw all reasonable inferences in favor of the non-moving party[.]"[3] While factual allegations are taken as true, a court need not accept mere legal conclusions.[4] "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are not enough to state a claim.[5]

## *Analysis*

Plaintiffs do not specify in their Complaint whether they seek relief against Mays in his individual capacity, official capacity, or both. Mays asserts that the Complaint raises only claims against him in his individual capacity. But when a complaint does not specify in what capacity a plaintiff is suing an officer, "the determination must be made by

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

[2] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (citation and internal quotation marks omitted).

[3] *Doe v. Woodard*, 912 F.3d 1278, 1285 (10th Cir. 2019) (citation omitted).

[4] *Khalik v. United Air Lines*, 671 F.3d 1188, 1190–91 (10th Cir. 2012).

[5] *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).

reviewing the course of the proceedings."[6] A personal-capacity suit seeks "to impose personal liability upon a government official for actions he takes under color of state law," whereas an official-capacity suit "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent."[7]

Plaintiffs seek only monetary damages. A judgment against Mays in his official capacity would therefore impose liability on the Oklahoma Highway Patrol.[8] Plaintiffs have not named the Oklahoma Highway Patrol or the State of Oklahoma in their Complaint. While not dispositive, this indicates that Plaintiffs only seek relief against Mays in his individual capacity.[9] And although they do plead facts alleging that the Oklahoma Highway Patrol had a policy in place that caused alleged violations of Mestas's constitutional rights,[10] Plaintiffs did not, in their response, dispute Mays's characterization of their claims as individual-capacity claims. The Court therefore concludes that Plaintiffs only seek relief against Mays in his individual capacity.[11]

---

[6] *Houston v. Reich*, 932 F.2d 883, 886 (10th Cir. 1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).

[7] *Graham*, 473 U.S. at 165.

[8] *See Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 783 (10th Cir. 1993) ("Since a judgment against a public servant in his or her official capacity imposes liability on the entity he or she represents an official capacity suit is simply another way of pleading an action against that entity." (citation omitted)).

[9] *Brown v. City of Las Cruces Police Dep't*, 347 F. Supp. 3d 792, 806 (D.N.M. 2018).

[10] See *Monell v. Dep't of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 692 (1978) (holding that Section 1983 "plainly imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights").

[11] In any event, under these circumstances the Eleventh Amendment would likely bar a Section 1983 claim against Mays in his official capacity. *Coker v. Stitt*, No. CIV-24-147-R, 2024 WL 5264805, at *1 (W.D. Okla. Dec. 31, 2024) ("Actions in federal court against

I.  **Mays is entitled to qualified immunity against Plaintiffs' Section 1983 individual-capacity claims against him.**

Mays seeks dismissal of Plaintiffs Section 1983 claims against him in his individual capacity. Qualified immunity protects government officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[12] Although the burden on a Rule 12(b)(6) motion typically rests on the moving party, when the defendant raises qualified immunity, the "burden rests on the plaintiff to provide fair notice of the grounds for the claims against each" defendant individually.[13] Plaintiffs seeking to overcome the presumption of qualified immunity must therefore "allege facts sufficient to show (assuming they are true) that" the government official (1) "plausibly violated their constitutional rights, and [(2)] that those rights were clearly established at the time."[14] A complaint need not "include all the factual allegations

---

States and state officers sued in their official capacities for money damages are barred by the Eleventh Amendment." (collecting cases)). "States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010) (citation omitted). Oklahoma has not waived its Eleventh Amendment immunity (*see* OKLA. STAT. tit. 51, § 152.1), Section 1983 "does not abrogate a state's sovereign immunity" (*Muscogee (Creek) Nation*, 611 F.3d at 1227), and the *Ex Parte Young* exception only applies where the plaintiff seeks "only declaratory and injunctive relief rather than monetary damages," (*Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007)).

[12] *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010).

[13] *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).

[14] *Id.* at 1249.

6

necessary to sustain a conclusion that [the] defendant violated clearly established law."[15] It must, however, "meet the minimal standard of notice pleadings as articulated by the Court in *Twombly*."[16] Courts are to resolve issues of qualified immunity at the "earliest possible stage in litigation."[17]

### A. Plaintiffs must plead facts to show that a reasonable official in Mays's position would have been on notice that his actions exposed him to supervisory liability.

"Because there are cases where [courts] can more readily decide the law was not clearly established before reaching the more difficult question of whether there has been a constitutional violation, [courts] may exercise discretion in deciding which prong to address first."[18] The Court first considers whether Plaintiffs have alleged that Mays violated clearly established law.

#### 1. Clearly Established Law

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"[19] "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing

---

[15] *Id.* (citation and internal quotation marks omitted).

[16] *Id.*

[17] *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation and internal quotation marks omitted).

[18] *Est. of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016) (citing *Pearson*, 555 U.S. at 236).

[19] *Ullery v. Bradley*, 949 F.3d 1282, 1291 (10th Cir. 2020) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).

precedent."[20] It must be "so thoroughly developed and consistently recognized under the law of the jurisdiction as to be 'indisputable' and 'unquestioned.'"[21] It is not a generalized inquiry; "[t]he dispositive question is 'whether the violative nature of the *particular* conduct is clearly established.'"[22]

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."[23] There needn't be a decision "directly on point," but "existing precedent must have placed the constitutional question regarding the illegality of the defendant's conduct beyond debate."[24] Even in the absence of "binding authority involving materially similar facts," a right can be clearly established if the official's "conduct is so egregious [that] even a general precedent applies with 'obvious clarity[.]'"[25] The central inquiry is whether the law, at the time of the allegedly unlawful conduct, provided "'fair warning' that the defendant's conduct was unconstitutional."[26]

---

[20] *Ullery*, 949 F.3d at 1291 (quoting *D.C. v. Wesby*, 583 U.S. 48, 63 (2018)).

[21] *Lobozzo v. Colo. Dep't. of Corrections*, 429 Fed. Appx. 707, 710 (10th Cir. 2011) (quoting *Zweibon v. Mitchell*, 720 F.2d 162, 172–73 (D.C. Cir. 1983)).

[22] *Ullery*, 949 F.3d at 1291 (emphasis in original) (quoting *Mullenix*, 577 U.S. at 12).

[23] *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001) (citation and internal quotation marks omitted).

[24] *Ullery*, 949 F.3d at 1291 (quoting *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019).

[25] *Id.* at 1291–92 (citing *Lowe v. Raemisch*, 864 F.3d 1205, 1210 (10th Cir. 2017)).

[26] *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)); *Cummings*, 913 F.3d at 1240.

### *2.    Supervisory Liability*

Plaintiffs' claims against Mays are based on a theory of supervisory liability. "Section 1983 does not authorize respondeat superior liability for a supervisor based solely on the actions of his subordinates."[27] A plaintiff must therefore show an affirmative link between the supervisor and the alleged constitutional violation.[28] "The three elements required to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities are: (1) personal involvement, (2) causation, and (3) state of mind."[29]

To show personal involvement, a plaintiff can plead that the supervisor "promulgated, created, implemented, or possessed responsibility for the continued operation of a policy," or that the supervisor established, or utilized an "unconstitutional policy or custom, provided the policy or custom resulted in a violation of the plaintiff's constitutional rights."[30] Regarding causation, a plaintiff must plead facts sufficient to show that the supervisor's "alleged action(s) caused the constitutional violation by setting in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights."[31] And as to the third

---

[27] *Burke v. Regalado*, 935 F.3d 960, 997 (10th Cir. 2019) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

[28] *Cox v. Glanz*, 800 F.3d 1231, 1250 (10th Cir. 2015).

[29] *Burke*, 935 F.3d at 997 (cleaned up and citations omitted).

[30] *Id.* (cleaned up and citations omitted).

[31] *Id.*

element, the supervisor's state of mind "can be no less than the *mens rea* required of any of his subordinates to commit the underlying constitutional violation."[32]

### B. Plaintiffs cite to no authority showing that Mays's alleged conduct violated clearly established law.

Plaintiffs' Section 1983 argument essentially boils down to this: (1) Mestas had a right to due process and to be free from excessive force; (2) Tactical Vehicle Interventions, when performed at high speeds, constitute excessive force; (3) Mays, being (i) responsible for a policy that did not limit the speed at which Tactical Vehicle Interventions may be performed and (ii) deliberately indifferent to the associated risks of the policy (iii) caused Mestas's rights to be violated. But even assuming the policy Mays maintained caused Mestas's rights to be violated, Plaintiffs have failed to show that maintenance of the policy violated clearly established law.

Plaintiffs have identified no "Tenth Circuit or Supreme Court precedent close enough on point to make the unlawfulness of [Mays's] actions apparent."[33] And none of the cases they do cite "are sufficiently similar to put an officer in [Mays's] position on notice of the violative nature of the *particular* conduct that allegedly violated" Mestas's rights in "the specific context of this case."[34] At best, Plaintiffs have shown that both (1)

---

[32] *Cox*, 800 F.3d at 1250 (cleaned up and citation omitted).

[33] *See Mascorro v. Billings*, 656 F.3d 1198, 1208 (10th Cir. 2011).

[34] *Choate v. Huff*, 773 F. App'x 484, 488 (10th Cir. 2019) (cleaned up) (emphasis in original) (quoting *Mullenix*, 577 U.S. at 12); *Mascorro v. Billings*, 656 F.3d 1198, 1208 (10th Cir. 2011).

Four of the opinions on which Plaintiffs rely do not involve supervisory liability. *Olsen v. Layton Hills Mall*, 312 F.3d 1304 (10th Cir. 2002); *Reavis estate of Coale v. Frost,* 967 F.3d 978 (10th Cir. 2020); *Cordova v. Aragon*, 569 F.3d 1183 (10th Cir. 2009); *County of*

the doctrine of supervisory liability under Section 1983[35] and (2) "the use of deadly force to stop a fleeing vehicle is unreasonable unless there is an immediate threat of harm to [the officer] or others"[36] are clearly established. They have not, however, shown that an official in Mays's position would be on notice that maintenance of a policy like the one at issue would expose him to liability under the Constitution.[37] Accordingly, Plaintiffs have failed to overcome the presumption of qualified immunity.

Moreover, to accept Plaintiffs' argument would require the Court to conclude that any Tactical Vehicle Intervention performed above a certain speed limit constitutes

---

*Sacramento v. Lewis,* 523 U.S. 833 (1998). Two concern failure to protect prison inmates under the Eighth Amendment. *Laury v. Greenfield,* 87 F. Supp. 2d 1210 (D. Kan. 2000); *Keith v. Koerner*, 843 F.3d 833 (10th Cir. 2016). Two bear on supervisory liability where the supervising officer was physically involved in the alleged violation, making no reference to a policy maintained by the supervising officer. *Valdez v. Macdonald*, 66 F.4th 796 (10th Cir. 2023); *Finch* v. *City of Wichita, Kansas*, No. 18-1018-JWB, 2020 WL 3403121 (D. Kan. June 19, 2020), *aff'd sub nom. Finch v. Rapp*, 38 F.4th 1234 (10th Cir. 2022). One pertains to the overdetention of a pretrial detainee. *Dodds v. Richardson,* 614 F.3d 1185 (10th Cir. 2010). The remaining three cases to which Plaintiffs cite are not from the Tenth Circuit or the Supreme Court, and they involve claims of supervisory liability involving failure to train, supervise, or control specific officers in the context of excessive force involving shootings and an officer's "unprovoked assault." *Estate of Fuentes ex rel., Fuentes v. Thomas,* 107 F. Supp. 2d 1288 (D. Kan. 2000), *aff'd sub nom. Cerca v. Thomas*, 30 F. App'x 931 (10th Cir. 2002); *Felts v. Board of County Comm'rs of Valencia Cnty.,* No. 13-CV-1094 MCA/SCY, 2015 WL 13665458 (D. N.M. Mar. 30, 2015); *McGrath v. Scott,* 250 F. Supp. 2d 1218 (D. Ariz. 2003).

[35] *See Laury,* 87 F. Supp. 2d at 1221 (collecting Tenth Circuit cases).

[36] *Frost,* 967 F.3d at 990 (10th Cir. 2020).

[37] *Cf. Choate*, 773 F. App'x at 488 (10th Cir. 2019) ("[The [p]laintiff cites to no cases in which an officer was held liable for another officer's use of force where this use of force was sudden, unannounced, and short in duration.").

excessive force. But the Supreme Court, contemplating Tactical Vehicle Interventions, has said that:

> we are loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive *so recklessly* that they put other people's lives in danger. It is obvious the perverse incentives such a rule would create: Every fleeing motorist would know that escape is within his grasp, if only he accelerates to 90 miles per hour, crosses the double-yellow line a few times, and runs a few red lights. The Constitution assuredly does not impose this invitation to impunity-earned-by-recklessness.[38]

Instead, the Supreme Court ruled that "[a] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death."[39] Given that the Supreme Court has "blessed" this particular method of ending a chase,[40] it isn't clearly established that the Oklahoma Highway Patrol's requirement that troopers "carefully compare the seriousness of the violation to the hazard of a vehicle pursuit" when determining whether a Tactical Vehicle Intervention is appropriate,[41] constitutes a violation of clearly established law. Mays is therefore entitled to qualified immunity as to Plaintiffs' Section 1983 claims.

---

[38] *Scott v. Harris*, 550 U.S. 372, 385–86 (2007) (emphasis in original).

[39] *Id.* at 386.

[40] *Christiansen v. Eral*, 52 F.4th 377, 381 (8th Cir. 2022) (citation omitted) (discussing *Scott v. Harris*).

[41] Compl. (Dkt. 1), at ¶ 23.

## II. The Motion does not adequately address Plaintiffs' state-law claims.

Although Mays seeks dismissal from the suit entirely, he doesn't substantively address Plaintiffs' claims against him pursuant to Oklahoma law. In one footnote, he cites to Section 163(C) of the Oklahoma Governmental Tort Claims Act, which provides that lawsuits "instituted pursuant to the provisions of this act shall name as defendant the state or the political subdivision against which liability is sought to be established. In no instance shall an employee of the state or political subdivision acting within the scope of his employment be named as defendant . . . ."[42] The remainder of the motion focuses solely on qualified immunity, but court-made qualified immunity does not apply to those state-law claims.[43] Because Mays did not, as Federal Rule of Civil Procedure 7(b)(1) requires, "state with particularity the grounds for seeking the order," as to Plaintiffs' state-law claims, the Court declines to dismiss those claims.

### *Conclusion*

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion (Dkt. 7) and **DISMISSES** Plaintiffs' Section 1983 claims against Mays.

---

[42] OKLA. STAT. tit. 51, § 163(C).

[43] *Dashan v. State of Oklahoma, ex rel. Bd. of Regents of Univ. of Oklahoma*, No. 08-CV-186-TCK-FHM, 2008 WL 4899279, at *10 (N.D. Okla. Nov. 12, 2008) (citing *Eidson v. Owens*, 515 F.3d 1139, 1145 (10th Cir. 2008)).

**IT IS SO ORDERED** this 28th day of February 2025.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE